**Evan Michael Hess, Attorney**
1794 S. Victoria Ave., Second Floor,
Ventura, CA 93003
t. (213) 545-1660

Evan Michael Hess, Esq. – State Bar No. 272942
evan@emhlegal.com

*Attorneys for Plaintiffs, Christopher Zsarnay and Z Studios, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER ZSARNAY, an individual; and Z STUDIOS, INC., a California Corporation,<br><br>             Plaintiffs,<br>    vs.<br>MOEHAIR USA INC., a California Corporation; SUDI PARVARESH, an individual; and DOES 1 – 10, inclusive,<br><br>             Defendants. | Case No: 8:25-cv-283<br><br>COMPLAINT FOR:<br><br>1. COPYRIGHT INFRINGEMENT<br>2. QUANTUM MERUIT – GOODS AND SERVICES<br>3. FRAUD<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs, Christopher Zsarnay, an individual, and Z Studios, Inc., a California Corporation, by and through counsel, for their Complaint against Defendants, allege as follows:

## INTRODUCTION

1. This matter arises out of multiple instances of copyright infringement wherein Plaintiffs were hired by Defendants to take product images for use on Defendant MoeHairs's commercial website and for advertising Defendants' new product line.

2. Plaintiffs and Defendants had a long-standing working relationship wherein Plaintiffs would take the product images requested and provide the license for use of the images, always maintaining copyright for all images produced.

## JURISDICTION AND VENUE

3. Jurisdiction of this Court is invoked under 28 U.S.C.A. § 1338 as an action arising under Acts of Congress relating to copyrights and trademarks, namely, the Copyright Act of 1976, 17 U.S.C.A. §§ 101, *et seq.*

4. Venue is proper in this district pursuant to 28 U.S.C.A. § 1391(b) an (c) as Defendant is a corporation subject to personal jurisdiction in this district and is therefore deemed to reside here for purposes of venue.

## PLAINTIFFS

5. Plaintiff, CHRISTOPHER ZSARNAY, is, and at all times mentioned in this Complaint was, a California individual, residing in the State of California.

6. Plaintiff, Z STUDIOS, INC., is, and at all times mentioned in this Complaint was, a corporation, formed under the laws of the State of California, with its headquarters in Ventura County, California.

## DEFENDANTS

7. Plaintiffs are informed and believe and thereon allege that Defendant, MOEHAIR USA, INC., is, and at all times mentioned in this Complaint was, a California Corporation, formed under the laws of the State of California, with its headquarters in Orange County, California.

8. Plaintiffs are informed and believe, and thereon allege, that Defendant SUDI PARVARESH, is, and at all times mentioned in this Complaint was, a California individual, residing in the State of California.

9. Plaintiff is unaware of the true names and capacities of Defendants sued herein as DOES 1 through 10, inclusive, and therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that said

fictitiously named Defendants are in some manner responsible for the events and happenings alleged herein.

10. Plaintiff is informed and believes and thereon alleges that at all times relevant herein, each Defendant was acting for his or her or its own personal account and as legal owners, lessors, operators, managers, maintainers, agent servant, employee, employer, trustee, trustor, representative, fiduciary, partner, co-venturer, officer, director, stockholder, principal or coconspirator of each of the other Defendants, and as such was acting within the scope, course, and purpose of such authority, service, agency, fiduciary capacity, special trust partnership, employment or conspiracy.

11. Plaintiff is further informed and believes and thereon alleges that each Defendant induced, collaborated, agreed with, conspired, or otherwise participated in the events constituting this Complaint; and thus, is responsible in some manner for the events and happenings, and proximately caused the injuries and damages as herein alleged.

12. Where appearing herein, each and every reference to defendants or to any of them, is intended to be and is a reference to all Defendants hereto, and to each of them, named and unnamed, including all fictitiously named defendants, unless said reference is otherwise specifically qualified.

## FACTS AND BACKGROUND

13. Plaintiff Christopher Zsarnay is the owner and principal of Z Studios, Inc. (hereinafter "Z Studios"). Z Studios is a photography business specializing in commercial photography with an emphasis on product photography. Mr. Zsarnay has over thirty-three years of experience as a professional photographer.

14. Defendant, MoeHair, USA, Inc., (hereinafter "MoeHair") is a haircare business selling hair treatments, shampoos, conditioners, styling tools, and hair color on its website.

15. MoeHair began working with Plaintiffs in or about 2020, hiring Plaintiffs to produce product images of MoeHair's various haircare products.

16. Mr. Zsarnay throughout his career has always taken the requested images, provided them to the individual or company who requested them, then invoiced for payment after images were provided. This has long been a functional system for Mr. Zsarnay, and is how Plaintiffs took and provided images for MoeHair.

17. On or about November 2, 2022, a MoeHair employee contacted Mr. Zsarnay and Z Studios via email indicating that a box of MoeHair products, specifically, "Voodoo" semi-permanent hair color, had been shipped to Mr. Zsarnay.

18. In that email, the employee requested that Mr. Zsarnay and Z studios "…please photograph [the Voodoo colors] individually, as a group, and if you can get creative with them? Meaning, if you can take a picture of the pouring the color out, and any other way you can think of."

19. On or about November 13, 2022, Plaintiffs sent the requested Voodoo color images to MoeHair, a total of approximately 63 images. These images included the fronts and backs of all ten semi-permanent hair color bottles. There were further images of each color being poured, images of product color swatches, as well as hair color blobs. There was additional digital imaging done to generate three different group images of all of the product colors together.

20. Shortly after Z Studios provided MoeHair with the product images, MoeHair began using the images on their website for the purchase of Voodoo products directly from MoeHair. MoeHair also utilized these images on their Facebook and Instagram pages as advertisement of the new product line.

21. Plaintiffs invoiced MoeHair $4,375.00 for the work.

22. This invoice included, as usual, that use of the images was pursuant to a non-exclusive use license of the photographs and that payment of the invoice would avail the purchaser of the non-exclusive use of the images.

23. On or about December 5, 2022, Mr. Zsarnay contacted MoeHair to remind them that he and Z Studios had not yet been paid for the Voodoo photographs.

24. As payment had not yet been remitted, MoeHair did not have the license to use the Voodoo photographs taken by Plaintiffs on their website or on social media.

25. On or about March 28, 2023, when Mr. Zsarnay had still not been paid for the use of the photographs, and receiving no response from the employee he typically communicated with, Mr. Zsarnay contacted the COO/CFO of MoeHair, Defendant Sudi Parvaresh, to request payment for the images.

26. Mr. Zsarnay explained to Ms. Parvaresh that he had been producing product images for MoeHair for three years and had never before encountered issues with receiving payment. MoeHair had multiple past due invoices, and though Mr. Zsarnay and Z Studios had always worked on the "honor system" providing images when completed and anticipating payment shortly thereafter, Mr. Zsarnay informed Ms. Parvaresh that Plaintiffs would not release any new product photographs to MoeHair until all past invoices were paid in full.

27. Mr. Zsarnay indicated that moving forward he and Z Studios would regrettably have to ask MoeHair to pay for work in advance though that was not how he typically conducted his business.

28. On or about March 29, 2023, Ms. Parvaresh responded to Mr. Zsarnay apologizing for the "situation that [he was] encountering" and stating that she would "speak with accounting."

29. On or about March 29, 2023, Mr. Zsarnay provided the final invoice for all work directly to Ms. Parvaresh, per her request, and she further asked for the "job detail."

30. Mr. Zsarnay responded that same day with a breakdown of the work performed, including how many images were produced and what each image

depicted. Mr. Zsarnay further informed Ms. Parvaresh that he charged MoeHair by the image and not by the day, as an act of good faith. In actuality the total would have been far higher due to the use of studio time and the need for an assistant.

31.    On May 2, 2023, Mr. Zsarnay followed up with Ms. Parvaresh regarding the payment of the past due invoices. Mr. Parvaresh responded on May 3, 2023, stating "Sorry I did not have a resolution for you, since I did not approve this and there was no quote that I could refer to, therefore I cannot interfere." Mr. Zsarnay responded to this email, stating, "MoeHair never asked me to give quotes on jobs they have asked me to do. I did the work on the honor system. Gaby would send me the products and I produced work as directed. Then I invoiced the job with the same pricing I have done all along for them."

32.    To date MoeHair continues to use the images that Mr. Zsarnay and Z Studios took of MoeHair's products for use on their website and for advertisements on social media.

## CAUSES OF ACTION
## FIRST CAUSE OF ACTION
## COPYRIGHT INFRINGEMENT
(*Against All Defendants*)

33.    Plaintiff realleges and reincorporates each and every allegation contained in all previous paragraphs of all pervious sections and Causes of Action in this Complaint, inclusive, as though fully set forth herein.

34.    Mr. Zsarnay, by and through his company Z Studios, was hired by MoeHair to take photographs of various MoeHair products for use on MoeHair's website and in marketing.

35.    Mr. Zsarnay is the author of all images used by MoeHair on their website that were created by Mr. Zsarnay for MoeHair's use under license.

36.    For over three years MoeHair knew that the images provided by Z Studios and Mr. Zsarnay were used under a non-exclusive use license with Mr.

Zsarnay as the copyright holder for all images. This non-exclusive use license is clearly printed on Z Studio's invoices.

37. MoeHair refused to pay Mr. Zsarnay and Z Studios for the non-exclusive use license for all of the images taken of all Voodoo Hair products including bottle fronts, bottle backs, color swatches, color pours, color blobs, and group images of the products a total of sixty-three images.

38. At least thirty-three images were used by MoeHair on their website for product sales. At least seven other images created by Plaintiffs were used on MoeHair's social media accounts for advertisement of the products.

39. Plaintiff is the owner and proprietor of all right, title, and interest in the Copyrighted Works.

40. The Copyrighted Works are comprised of wholly original material and have been deemed copyrightable subject matter under the copyright laws of the United States.

41. Defendant's acts identified above violate Plaintiff's exclusive rights under § 106 of the Copyright Act of 1976, 17 U.S.C.A. § 106, and constitute infringements of its Copyrighted Works. Defendant's past and continuing use of Plaintiffs' images constitutes a willful and deliberate infringement of Plaintiff's rights and is causing irreparable harm and damage to Plaintiff.

## SECOND CAUSE OF ACTION
## QUANTUM MERUIT – GOODS AND SERVICES
(*Against All Defendants*)

42. Plaintiff realleges and reincorporates each and every allegation contained in all previous paragraphs of all pervious sections and Causes of Action in this Complaint, inclusive, as though fully set forth herein.

43. MoeHair, through its agents or representatives, contacted Mr. Zsarnay and his company, Z Studios, to photograph MoeHair's new product line, Voodoo semi-permanent hair color, for use on their sales website and in marketing.

44. Mr. Zsarnay and Z Studios did photograph those products, as requested, and delivered those images to MoeHair through its agents or representatives on November 13, 2022.

45. The reasonable value of the goods and services provided was approximately $9,000.00.

46. MoeHair and its agents and representatives refused to pay Plaintiffs, telling Plaintiffs that the work "wasn't approved" by the CEO/CFO, Defendant Parvaresh. Ms. Parvaresh refused to pay Plaintiffs for the images he produced for MoeHair, despite knowing that Plaintiffs did produce the images specifically for MoeHair and they were in use by Defendants on their website and for advertising on their social media pages.

47. Despite demands from Plaintiff, the reasonable value of the services provided to Defendants are and remain unpaid.

48. As a result of the use of the images created by Plaintiffs and utilized by MorHair for sale of their products, MoeHair has been unjustly enriched at the expense of Plaintiffs.

### THIRD CAUSE OF ACTION
### FRAUD
(Against All Defendants)

49. Plaintiff realleges and reincorporates each and every allegation contained in all previous paragraphs of all pervious sections and Causes of Action in this Complaint, inclusive, as though fully set forth herein.

50. MoeHair, through its agents or representatives has refused to pay for the images it obtained through Mr. Zsarnay indicating that as there was no contract, and specifically no quote for the work, MoeHair would not pay for the work performed.

51. MoeHair, however, clearly realizes the value in the images it received from Mr. Zsarnay as it has used them on its website and for marketing purposes.

52. MoeHair, through its agents or representatives had a long standing agreement with Plaintiffs for the creation of product images for use in sales and advertisement on MoeHair's website and social media pages.

53. MoeHair, through its agents or representatives, did engage Plaintiffs to photograph the Voodoo semi-permanent hair color line of products, which Plaintiffs did. Plaintiffs then provided Defendants with the images for their use on their website and social media pages with payment to be remitted shortly thereafter.

54. Plaintiffs and Defendants had a long standing agreement that Plaintiffs invoices would be paid after the receipt of images, as that was always Plaintiffs' standard for work performed. Further, Mr. Zsarnay had never before been requested to provide a "quote" before performing any work for MoeHair for the prior three years, and performed the job as he normally would.

55. While Mr. Zsarnay charged a per image rate for the benefit of MoeHair as a professional courtesy, MoeHair was made aware that the typical rate for Mr. Zsarnay's work would have been more than double the price for other customers. Mr. Zsarnay typically charges a "by the day" rate for the work performed, and a job such as that performed for MoeHair would typically cost upwards of $9,000.00.

56. As a result of Defendants' refusal to pay Plaintiffs for the work performed for the benefit of Defendants Plaintiff has been financially harmed.

WHEREFORE, Plaintiffs request that the Court grant the following relief:

    A. That Defendant be permanently enjoined from infringing the copyrighted works;

    B. That the court order the removal of all product listings on Defendants' website and social media accounts containing copies of the copyrighted works;

    C. The Defendant be required to pay to Plaintiff such actual damages as they have sustained as a result of Defendant's copyright infringement pursuant to 17 U.S.C.A. § 504(b);

    D. That Defendant be required to account for and disgorge to Plaintiff all gains, profits and advantages derived by its copyright infringement pursuant to 17 U.S.C.A. § 504(b);

    E. The Defendant be required to pay Plaintiff statutory damages pursuant to 17 U.S.C.A. § 504(b);

    F. That Defendant be required to pay Plaintiff an increase in the award of statutory damages due to Defendant's willful infringement pursuant to 17 U.S.C.A. § 504(c)(2);

    G. That Defendant be ordered to pay to Plaintiff the costs of this action along with reasonable attorney's fees pursuant to 17 U.S.C.A. § 505; and

    H. That Plaintiff is granted such further relief as the court deems just.

Dated: February 10, 2025    Respectfully Submitted,

EVAN MICHAEL HESS, ATTORNEY

By: _____

Evan Michael Hess, Esq.
*Attorneys for Plaintiffs, Christopher Zsarnay and Z Studios, Inc.*